[Civ. No. 18116.   Second Dist., Div. Two.   Apr. 24, 1951.]

FRANK T. DOUGLAS, Appellant, v. SAMUEL P. FOSTER, Respondent.

James M. Gammon and C. V. Eberhard for Appellant.

Hobart & Hobart for Respondent.

WILSON, J.—This is an action to recover moneys alleged to have been paid by plaintiff for defendant's benefit and for

services performed. By his answer defendant denies he is indebted to plaintiff and counterclaims for money had and received. From a judgment in favor of defendant in the amount of $444.38, plaintiff appeals.*

The only question raised upon appeal is whether the findings are supported by the evidence.

In 1942, defendant leased from one Jacob Christen a furnished café and adjacent cottage in the vicinity of San Dimas, California. At the same time defendant employed plaintiff to manage the café. It was agreed between the parties that in addition to board and lodging plaintiff was to be paid $5.00 a day in cash, his wife was to receive $2.00 a day and plaintiff was also to receive 40 per cent of the net profits of the business. Some time later plaintiff's pay was increased to $7.00 a day and that of his wife to $3.00 a day.

About May, 1944, plaintiff bought the property upon which the restaurant was located and the equipment from Christen. On September 1, 1944, defendant entered into a lease with plaintiff, the lease providing that alterations and repairs were to be made at the expense of the lessee and to become the property of the lessor at the termination of the lease; lessee was to maintain the equipment and motors in good working condition and to pay for any repairs which might be required due to ordinary wear and tear.

The business was operated in the following manner: Plaintiff purchased the liquor, food and supplies and hired and paid the employees. He paid all the bills except the rent, social security, unemployment insurance and withholding taxes which were paid by defendant. Some of the bills were paid by plaintiff in cash when the goods were delivered or purchased and others were paid by check. All wages were paid by cash. Plaintiff deposited the receipts in the bank in the same account in which he kept his personal funds. At the end of each month he took the cash register tapes representing the receipts of the café, subtracted the total expenses paid by him and drew a check for the credit balance, if any, which he deposited in another account upon which only defendant

---

*Appellant's brief fails in two particulars to conform with rule 15(a) of Rules on Appeal, in force when brief was filed (22 Cal.2d 12): (1) There are no headings descriptive of the subject matter covered in the argument. Headings "Point I" etc., do not fulfill the requirements of the rule and are of no assistance to the court. (2) The statement of facts does not contain any reference whatever to the record. (In the new rules which became effective January 1, 1951, rule 15(a) (36 Cal.2d 15) has not been changed.)

drew checks. Plaintiff sent the cash register tapes and the bills he had paid to defendant shortly after the first of each month. He made no other accounting to defendant, who kept the books and computed the net profit or loss for each year.

Plaintiff testified that when necessary he would advance his personal funds to pay current bills and reimburse himself from the receipts of the business; that beginning in the latter part of 1947 business began to fall off; that in April or May and again in June or July he told defendant there were a number' of unpaid bills.

It is plaintiff's contention that since the evidence is undisputed that he expended $3,348.15 for merchandise and services delivered to defendant's place of business and there is no evidence of repayment, the finding that defendant is not indebted to him is not supported by the evidence.

All the receipts of the café were under the sole and absolute control of plaintiff. Some of these he kept in cash for the purpose of paying bills and the balance he· deposited in his personal account without segregating them in any way from his personal funds. He paid employees' salaries in cash, taking no receipt therefor. Receipts from the sale of cigarettes and from the slot machines were not rung up on the cash register. The customers' food checks were kept in plaintiff's possession. Credit was extended to a friend of plaintiff, one Tom Johnson, running as high as $100 a month. Plaintiff testified he would ring the charge on the cash register, put his own money in the till and keep the cash register tickets until Johnson repaid him. The bartender testified the sales to Johnson were not rung up on the cash register but that he kept a slip on the shelf of the register upon which he marked down the amounts charged.

Expert witnesses testified that the cost of liquor should not exceed 40 per cent of the gross sales of liquor and in most establishments it would be about 35 per cent; the cost of food should not be more than 55 per cent of gross food sales and it was generally between 45 and 50 per cent. In the café operated by plaintiff the cost of liquor amounted to 53.4 per cent of the sales for the period January 1, 1948, to September, 1948, and the cost of food for the same period amounted to 76.4 per cent. These percentages were based on the food and liquor sales reported by plaintiff and included in the cost were all bills which he claimed to have paid out of his personal funds. Both experts testified such percentages were unreasonable high. One witness testified that if the

highest reasonable percentage, that is, 40 per cent for liquor costs and 55 per cent for food costs, were applied to the bar sales of $12,917.60 and food sales of $10,224.17 for that period the gross profit of the café should have been $12,738.02. However, the gross profit for this period was only $8,915.08, a difference of $3,824.94. The percentages for the years 1946 and 1947 were normal and plaintiff's explanation of the increase was that there was a decline in sales with no corresponding decline in overhead. Both expert witnesses testified that would have no effect upon the percentage of cost to gross sales.

Defendant testified he knew the business was losing some money but he thought it was only a matter of two or three hundred dollars. In April he noticed that plaintiff was including among his paid bills some that were incurred three months previously. On April 10, 1948, he wrote plaintiff as follows: ''I have paid out $450.00 rent—152.00 S.S. Taxes and Employees Contribution—34.76 Insurance, and 325.00 License since the 1st of Jan. 1948. I have received 64.86 in those 3 months and you report a loss of 206.70 in Mar. and 146.58 in Jan.

''I cannot keep this up. From your last 4 or 5 months you have been putting in bills that were enacted 3 months previous. So you must also be behind in payment of bills.

''Something must be done and quick, so I will be waiting a report from you first as to what you think.

''Let me know at end of each month hereafter just what bills you are holding and amounts.'' To this communication plaintiff replied: ''I know its been tough and I will see you in the next few days. I am trying to work out a plan for more income with no more overhead. Business is just bad and I'll have to do something to increase it.''

Plaintiff did not thereafter advise defendant as to the bills he was holding and it was not until September, 1948, that he told defendant he had advanced $3,348.65 and that there were $3,084 in unpaid bills for the months of May, June and July. Plaintiff testified he did not advise defendant earlier because defendant was out of town for nine weeks prior to September. Defendant testified he was out of town only two weeks.

The bills which plaintiff allegedly paid with his personal funds as shown by his bill of particulars were incurred and paid by him between April 6 and September 21, 1948. He testified the funds which he advanced were taken from his

safe deposit box; that he had about $4,000 which represented money he had saved over a period of years from his salary, his bonus, profits from the slot machines and an undetermined amount he made from operating a "book."

Plaintiff admitted his conviction of two felonies, embezzlement and grand theft. The only evidence that he had used his personal funds to pay the café bills is his testimony and his credibility was for the determination of the trial court. It is obvious that the court did not believe plaintiff's testimony that he advanced the money for the payment of the bills but concluded that they were paid from the receipts of the business. Such a conclusion is supported by the evidence.

There is a conflict in the evidence with respect to the articles purchased by defendant and upon which the court found plaintiff was indebted to defendant in the sum of $444.38. There is no dispute over the fact that the articles were purchased nor the fact that they were paid for out of the profits of the business. Plaintiff contends that the items purchased constituted "alterations and repairs" and since the lease provides that the lessee shall make and pay for any alterations and repairs which shall become the property of the lessor at the termination of the lease, defendant cannot recover the cost thereof. Defendant contends the articles were additions. In finding that plaintiff is indebted to defendant the court impliedly found in accordance with defendant's contention and since there is a conflict in the evidence this court is bound by the determination of the trial court.

Finally, plaintiff contends he should have received credit for his share of the tax on the liquor license which was paid and subsequently refunded to defendant. Plaintiff offered no evidence as to the amount of the tax paid, the amount of the refund or that there was a refund.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 9, 1951, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1951.